Case number 24-5199. Adele B. Ruppe at balance versus Marco Rubio in his official capacity as Secretary of State. Mr. Burns for the account, Mr. Teague for the evidence. Good morning, Your Honor. May I please the court? The central issue in this case is really on a summary judgment motion is whether the plaintiff in all aspects of their claims has presented sufficient factual evidence to cause a dispute that should go to a jury. I'm not going to regurgitate. This has been heavily briefed and I think the court has seen the briefs and most of this goes back and forth. I think it's important to understand the actual factual predicate of what happened here because it drives a lot of where the court went. There is no dispute that in December of 2015, my client went to Heather Townsend, who was the head of the human resources section for the Bureau that she was in, the European Bureau, and complained to her that she was being mistreated by Mr. Ziff, that other employees were being mistreated by male managers. There was bullying. There was what she calls harassment. She had been alleged to have been paranoid. She had been alleged to have been, he had used words like micromanager, told her to sit at her desk and do nothing. And so she went to Ms. Townsend and Ms. Townsend, the court, in its opinion, says that Ms. Townsend wasn't connected with the EEO process, but Ms. Townsend, in the record, was in charge of handling EEO complaints for the Bureau. So she was actually connected. The court then says, my client is then told, the court says my client voluntarily went to the Ombudsman. My client presented these set of facts to Ms. Townsend. Ms. Townsend said, go to the Ombudsman. We'll do a climate survey. Why is that significant? Because what's not mentioned in the briefs is under 29 CFR 1614.105, the original obligation of an agency when it gets a potential claim that could impact EEO is to help the employee analyze that claim and present it either as EEO, as harassment, and as an Ombudsman claim. Ms. Townsend's direction basically waylaid that complaint from where it should have gone, and that set in course some consequences for my client. During the course of the following 10 months, she continued to complain that she was being harassed. She also complained that Mr. Ziff was showing inappropriate attention to one of the female members of his staff, and that other women in the section had complained about that. She went and presented that, as Mr. Heffern says, her second level supervisor, she told him about that. He confirms that, and he says, I talked to Ziff. The court says that none of that rises to the level of either hostile work environment, discrimination, or the types of conduct that would warrant a jury to hear that. We respectfully disagree. And we also think that because of the court's decision in that sense, it framed – Can you explain which claim are you addressing? Because there are a lot of different legal claims here, and I'm having trouble fitting your factual descriptions into one of these structures. Which are we talking about? So the discrimination claim would be based upon his statements to her in two ways. One, that it resounds in EEO that he is discriminated against her because she is female, because he is conducting his own sort of harassment and hostile work environment by showing inordinate attention to one woman over the others, which is the classic hostile work environment claim. The second part of that claim would be that he is personally denigrating her based on her fact being a woman, and at the same time denigrating her based on his perception of her – Personal denigrating is part of hostile work environment. Correct. This is all your hostile work environment. To some extent, it is, because he's also – the discrimination exhibits itself in telling her to sit down and not including her in meetings. But that's not a freestanding claim. That's true. Your complaint. That's true. The only claim in your complaint that relates to the facts you are now relating is hostile work environment. That is correct. This is not about not being selected for a job. This is not about not getting performance pay. This is none of that. This is only hostile work environment that we're talking about today.  But if the court – so the problem with the court's analysis is if the court discounts the hostile work environment, then the other claims get picked off one by one. And so, in other words, the court says, well, when she applied for this position as DCM in SOFIA, she didn't – she can't prove that her supervisor is engaged in any conduct that didn't allow her to get that position. And also that that wasn't related to anything she said. That seems to be counterfactual. And I'll say – But that's just because she withdrew her application. It doesn't have to do with any of the stuff that you're talking about. But the reason she withdrew her application is John Heffern, who had admitted at the time that he had this discussion, she had already complained about Ziff and his inappropriate attention to one of the women. Heffern says that he went to her and told her, essentially, she wasn't going to make it. And so to understand the selection process in the agency, imagine, if you will, you're going to run the Boston Marathon, and you don't qualify. You can't run the race. My client was told she was on the short list. Then she came off. And not a single official has taken responsibility for that. The records regarding that are mysteriously lost. They weren't protected. The Privacy Act agency regulations said they should have been. They are lost. The evaluations, which she was assessed in that position, are lost. The 360 climate survey, which would have verified that other people were confirming her statements or denying them, have been lost. So all of that evidence, the court looked at that and said, you can't prove this. And as we said in our spoliation moment, of course not, because they've lost all the evidence that would support her claim. So what you do have remaining is statements of — But she did — So all the facts that you're relating right now actually don't address the district court's reasoning. But, Judge Pan, she did — as we said in our brief, she did put herself up for selection, and she was shortlisted, which means she made the best-qualified list. She was then told she's off the best-qualified list. And so staying on to compete for the position would have been futile. And it's important to show one other distinction the court missed. The only positions she withdrew her nominations for were the European positions that Heffern, Ziff, and Townsend said on the original panel that would have approved her or disapproved her. She continued to apply for positions in other areas of the State Department. So there is a direct correlation between the withdrawal of the application and the acknowledgement after a conversation with Heffern, she's not going to make it. She made it to the finals for this shortlist and interviewed for other positions. And wouldn't her supervisor also have been consulted about those other positions? Not at the DCM level. My understanding is the supervisors don't participate in the actual — the DCM committee, the selection committee. They participate in the first round. That wasn't my question. I guess I was curious about this because she was unsuccessful for European jobs. She was — she got very close to being selected in, I guess, Central Asia or South Asia jobs. And the claim is that she was stymied by her supervisor in the process. And I guess the fact that she advanced in this other process, they must have taken into account her supervisors. They have this 360 evaluation, et cetera, in these processes. And it's curious to me that he would stymie her for one set of selections but not the other. Well, I think that was at a different time. I'm not sure that was during the same period. But it's the same supervisor who would be consulted? I'm not sure that he was her supervisor when she applied for the second round. And I'm not sure what happened there because that wasn't in the evidence. It wasn't raised by the government. It wasn't raised by us. It has not been litigated yet. What we do know and what we are saying is that for the positions for which she was amply the most qualified, those in the European Bureau, because she had been lauded — I mean, I think it's important to remember that her 2015 evaluation, she got an award from Secretary Kerry for her work on Russian interference in the Ukraine, which was an important issue. And she had an outstanding stellar performance. And then the next year — And my understanding is that the issues with her were about her managerial capacity, not about her knowledge and her substantive work. But the comments they claim they relied upon, they lost. They don't have the actual comments from the 360 surveys that show that she was doing this. And one of her issues was two of the men I complained about, bullying and harassing, were asked to participate in that law — I'm sorry, 360 survey. I'm thinking about whatever this morning. In that 360 survey. So if I could have shown that, I could have gone further into whether or not there was discriminatory amnesty that affected the decision of these decision makers. But I think the fundamental factual issue is, if she withdraws her application because she knows she's not going to get selected for those positions, under the law, is that tantamount to denying her the opportunity to say there's an adverse action? We don't believe that's accurate. The case law we cite, because that would make someone have to participate in a process that they know they're not going to be selected for, in which they have been told by a supervisor that there were comments that are negative to them, that they've never seen, that they got no prior counseling on, no prior warnings on. There's no record that anybody counseled her on micromanaging through a form or anything. There's no documentation. All of the evidence relied upon by the government in its case comes from self-serving testimony of supervisors. What do you think is the best precedent for this argument? Because it's kind of a slippery slope in the sense of there's got to be an adverse action.  And when you have someone who applies for a position, but then they withdraw their application, but then yet they want to bring a claim for non-selection when they didn't go through the entire process to actually, you know, not get selected. You know, we, our precedent requires a pretty high bar before we recognize such a claim. I see my time is up. May I respond to your question, Judge Wilkins? So the issue here is, I think the probative issue of this is that goes to then, okay, she says the reason I withdrew it is because I was told I wasn't going to get selected. And, in fact, I was told that if I continued to pursue it, it could negatively affect me from Mr. Heffern. The interesting thing about this is that none of the supervisors in this case can say why she was taken off the short list. If there were true concerns about the things that were legitimate, then she would have been notified who took her off the short list and why. But nobody knows. Heffern says I didn't do it. Ziff says I didn't do it. And Newland says I didn't do it. Heffern says that Newland did it. Newland says, no, I didn't. There's a posturing that maybe Ziff did it. Ziff denies it. So we have this mystery. Adverse action isn't taking her off the short list. The adverse action that you're alleging is non-selection, and she didn't stay through the process to get to the non-selection. But, again, Judge Pan, the thing is, is if you understand how they select, in other words, if she doesn't make the short list, she cannot get the position. So, I mean, why participate in an act that's futile? Getting taken off a short list is a recognizable adverse action. Except in the non-selection. Yes. Because she could have gotten put in the process. Yes, that's exactly right. That's exactly right. We're not arguing that taking off the short list was an adverse action in and of itself. We're arguing that taking off was the precedent to the fact that she was non-selected and she could not have been selected under these circumstances. She could have been put back on the short list at some point if she had stayed in the process. That's completely speculative, and that's great. That's something great. But it's also speculative that she wouldn't have gotten selected, I guess, is the whole point. It's not whether she would have gotten selected. The issue is, in the non-selection, was it made an impossibility for her to be selected? And the answer to that is yes. And I think that is the kernel of the case, and that's the kernel of the case law. You don't have to engage in a futile action that will harm your reputation further. And I think that is the core of her case. It's like, of course I took myself off because they told me if I continued on this way, it could hurt me. And so I took myself off because I wasn't going to get the position anyhow. I see my time is up and well over. Is there no other questions? Thank you, Ron. All right. We'll give you some time on rebuttal. Good morning. Good morning. May it please the Court. Sean Teep on behalf of the United States. Aside from the Equal Pay Act transfer order appeal, the judgment of the district court should be affirmed on all counts because of a lack of the disputed material evidence requiring trial. I'm happy to handle any questions that the panel has. I will talk about some of the things that Mr. Burns talked about, one being the non-selection claim. Mr. Burns, and I'm glad Judge Pan sort of tried to focus the argument onto particular claims, because that's important. Because when you look at the particular claims and the elements required, there is a significant basis to affirm the ruling. Mr. Teep, can I ask you about the jurisdictional questions? So the government says there's no appellate jurisdiction over the transfer decisions. So what about our decision in Ukiah, which says there's an exception to this when both the transferring court and the transferee court have jurisdiction over a claim? So the government's position is that, agrees that Borms, you know, abrogated Waters, right, which means that there would be concurrent jurisdiction for the district court and the court of federal claims. So if that's the case, then why would we not have appellate jurisdiction under the reasoning of Ukiah? So what Ukiah, I think, was hitting on was that in another case, I think it was Goebel, where there was concurrent jurisdiction and the particular issue there might not be reviewable, because if it was reviewed by the federal circuit, the federal circuit would say, well, there's no error here, and so it doesn't matter, and so that particular issue would not get reviewed. And so that case, you know, if there was a collateral order, because, again, you know, under the collateral order doctrine, if there is something that would not otherwise be reviewable, you can review an interlocutory order. But, you know, the ultimate holding of the Ukiah decision found no appellate jurisdiction here, the appeal of the 1631 transfer order to the Ninth Circuit. What I'd like to do is — But the same principle applies here, because if the claim went to court of federal claims, court of federal claims couldn't send it back to the district court, couldn't say that the transferring decision was invalid. So there would be no effective review from the transfer decision. And the plaintiff, like where there is concurrent jurisdiction, a plaintiff has a right to choose a forum. I think respectfully, I think the federal circuit — so what should have happened here is the appeal should have been brought to the federal circuit, because under 28 — From a district court opinion? Yes. How would that work? They would file a petition of appeal in the federal circuit. Because if you're asking about the, I guess, the fact that it wasn't docketed yet in the court of federal claims, I mean, that doesn't govern the court's jurisdiction. I mean, the statute is very clear in 28-1292-D4A. If a district court mistakenly transfers something to the court of federal claims, the plaintiff is supposed to appeal to the federal circuit?  Well, what is your authority for that? Well, it's statutory. 28-1292-D4A clearly states that the federal circuit has exclusive jurisdiction of an appeal from an interlocutory order of a district court, which is what we have here, granting or denying in whole or part a motion to transfer an action to the court of federal claims. But here there was no granting or denying of a motion to transfer. It was just a sua sponte transfer.  And as courts have found, a motion by a court on its own motion, sua sponte, is the same. I think it's notable that the statute does not say motion by a party. If it said a motion by a party or a motion filed by a party, then I think there could be some more credence to what Your Honor is saying. But sua sponte motions are still not in the last motions. In this case, it was a sua sponte motion to transfer. And I would also direct Your Honor to 16— Sua sponte motion to transfer or just a sua sponte order? Order. Order is different from—I mean, motion just sort of implicitly, I think, subsumes the idea that the motion was made by a party. Well, I mean, courts have concluded that— I'll give you the Dumatne decision of the Ninth Circuit ruling. It did not have jurisdiction over the appeal of a contract claim. Sua sponte order transferred. It focused on the very purpose of Section 1292D4A, which is to have a single place for these transfer orders to be appealed to. And I think it's very important. So what 1292D4A says— The transfer order was an error. The government agrees that it was an error to transfer. In this case? In this case, yes. Yes, but the question before, Your Honor, now is do you have appellate jurisdiction? And so the government's not going to say that you have appellate jurisdiction when there's a statute that is clearly saying this court does not have appellate jurisdiction. And, again, I just want to— So if it were an error and it was— there had been a motion by a party to transfer, then it definitely would have gone to the Federal Circuit. So— Well, it should have gone to the Federal— I mean, the appeal would definitely go to the Federal Circuit. I guess my point is that it's not a question of whether it was an error or not to transfer because the statute says that if there's a transfer order by a district court on a motion, then the appeal has to go to the Federal Circuit. So it's not whether it's erroneous or not. It's whether or not this was on a motion. And I guess there is case law that suggests that a sua sponte transfer is on the court's own motion. Right. And the definition in Black's Law Dictionary of sua sponte is on the court's own motion. Right. And there's one, I think, very important piece here that I want to get to, if you don't mind, Your Honor, and that is let's look at 1631. So 1631— We don't even get to 1631 unless we decide that we have jurisdiction under 1292d-4. So I guess the order of operations is 1292d-4. Is it a motion or not? If we think that it doesn't apply because there was no motion, then we get to 1631, correct? No, Your Honor. So the district court, it didn't say what authority it was using, but it was clearly using the authority granted under 28 U.S.C. 1631. That provision allows a court to transfer a claim or an action to another court when there is a want of jurisdiction. Right. And that's what this district court said. This district court said that there's a want of jurisdiction on this claim. I know that you relied on 1631, but on the appellate issue, do we first look at 1292d-4a to see if that transfer order has to go to the federal circuit? Before we get to whether it was interlocutory or not and under Ukiah, et cetera, we can look at it. Where I'm going, Your Honor, is that the 1631 issue explains why it would be incorrect to hang your hat on, well, a party needs to make a motion because under 1631, just like any district court has to assure itself of its subject matter jurisdiction, courts will, sua sponte, say, I don't have jurisdiction. To cure the want of jurisdiction, I'm either going to dismiss or I'm going to transfer. And so it would be incongruous for the court to consider 1292d-4a as being only limited and requiring a party motion when the whole point of this provision is to have an appeal of a transfer order that was based on a district court's decision that it had a want of jurisdiction, which itself doesn't require a motion. And so, you know, the whole purpose here is to get to the federal circuit. I understand that, but that's not responsive to my question, which is as we sit here today and we're looking at your arguments and we're trying to decide if we have appellate jurisdiction here, we have a directly potentially on point statute, 28 U.S.C. 1292d-4a, and it says that if there's a transfer order from a district court, the federal circuit shall have exclusive jurisdiction from an interlocutory order granting or denying in whole and part a motion to transfer to the court of federal claims. So there was a transfer to the court of federal claims. The question is whether the federal circuit has exclusive jurisdiction over it, and the question as to whether this statutory provision applies is whether or not this was a motion or not. Right? And we don't get to Ukiah. That is whether we should exercise jurisdiction under the collateral order doctrine until we first get past 1292d-4a. So we have to consider whether this is a motion or not. Yeah, I would agree with Your Honor, and it is a motion. Is there any authority for, I guess it's one 11th Circuit authority dealing with similar language for a different statute that says that a motion under these circumstances has to be made by a party, but not by the court on sua sponte. Is there any other authority besides that 11th Circuit one? I think, but again, that's the contrary authority. Yes, I'm just wondering if there's any contrary authority other than that one 11th Circuit. I'm not aware of any other decision, but I am aware of the Dubotney decision, an unreported dissent by Judge Rogers in the U-Haul case cited in our brief. And so I think the balance of courts considering this issue say yes, I mean, it's, you know, a sua sponte order is an order based on the court's own motion. And if we get past 1292d-4a, say we decide that it has to be a motion by a party, is there a preservation issue on Ukiah with respect to the 1631 and collateral order doctrine type analysis? Because I guess your front either side hasn't asserted an argument in favor of jurisdiction based on Ukiah and arguments in favor of jurisdiction are waivable, forfeitable. Is that forfeited? Perhaps, yes. I mean, by appellant's counsel? Yes. Yes. Again, I think the issue, I mean, putting aside 1292, you know, one of the points here is, it's an interlocutory order anyways because it is an order, it's not final judgment, allows the litigation to continue. And so, you know, this court would not have jurisdiction over this appeal because it's an interlocutory order. So Ukiah is an exception to the rule that this is a non-final order. But I don't think Ukiah has been raised. Right. By the other side. So the position of the U.S. government is that although the government does believe that the district court has jurisdiction to hear the Equal Pay Act claim because of Borms and the other reasons articulated in the government's brief, where we find ourselves is in this position of who actually has the appellate jurisdiction to consider an appeal of the transfer order. And it seems very clear to the government that it is the federal circuit that must decide the propriety of the transfer order. Unless there's any other questions on the EPA jurisdictional issues. I guess the only issue with that is that if the federal circuit considers this, they've already ruled on this issue. We kind of know what they're going to do. And if that is not correct. It is up to us to try and convince the federal circuit otherwise, I suppose. And I think one of the weaknesses perhaps in the federal circuit's consideration on the, you know, is frankly what the court said in Borms is you need to look at the statute providing the cause of action and look at what that statute says. What the federal circuit has done is look to the Tucker Act first and primarily, and they haven't answered the question of, you know, 1331 jurisdiction. It's, you know, the statute under the FSLA says courts that have competent jurisdiction may hear the case and as the Supreme Court said in, I believe, Lightfoot, you know, that phrase court of competent jurisdiction means that the court has an existing basis for jurisdiction or source of subject matter jurisdiction, which the district court does under 1331. But again, the issue here first and foremost is whether or not this court has appellate jurisdiction to consider an appeal of the transfer order. I would like to just pivot to a couple of other issues mentioned by Mr. Burns, but I see my time is up. And so are there any questions from the court? We can take a minute to wrap up. Okay. The one thing I would say is on the non-selection claim, it is critically important to understand, as I think Judge Wilkins did, that you need to have an adverse action. And in these non-selection cases, you go back to the McDonnell and Douglas decision, the employer has to deny or reject the applicant. In this case, we never get to that point because Ms. Rupi withdrew her application before selection decisions were even made. And the record is undisputed that Ms. Rupi had an opportunity to progress higher, even though she wasn't one of the recommended candidates from the European Bureau. The record is very clear that other candidates who were, like her, below the line in the European Bureau recommendations then were recommended by the DCM committee to be the top candidates and to actually get selected. So it is not the case that the mere fact that Ms. Rupi, you know, didn't get that recommendation that she was out of the running. And so, Your Honors, unless there is anything else, the government respectfully requests that the court find that it does not have over Rupi's appeal of the Equal Pay Act Transfer Order and that it affirm the judgment of the district court on all other claims. Thank you. Thank you. All right. Mr. Burns, I believe you are out of time. We'll give you two minutes. Thank you, Your Honor. Don't need any more than that. Just very briefly, I think the characterization of the non-selection we've addressed, and it's addressed in our brief, so I don't want to regurgitate that. On the equal pay claim, we talk about how the district court retained jurisdiction. We understand the government's argument, but I think one of the things that's not mentioned and perhaps could be illuminative is this is akin to the issue that the Supreme Court faced in the mixed case appeal of Perry v. MSPB 582 U.S. 420 when there was a longstanding dispute over what jurisdiction the federal circuit had, what jurisdiction the district courts had in a mixed case appeal. I think the way that needs to be looked at is the plaintiff brings one set of actions, and they bring a set of actions to the court, and they combine the actions because it's logical. It's the same people. It's the same issues. It's the same agency, and there's resource for both the courts and the litigants that are preserved when that's done. And so when there's an appeal and you fracture that claim, you're putting a burden on the plaintiff to go to two separate courts and litigate two separate things. And in the real world, many plaintiffs are simply going to be discouraged from going forward. And that is, I think, what the Supreme Court grappled with when it had the Perry decision, where it finally came down and said, this is so complicated. We don't understand it. We bring one cause of action. If you have this employment claim and it's connected to this employment claim, then you go to the district court and you appeal it to the court of appeals. I think that's an issue that, given the fact that there's not a lot of case law on this and given the fact there's a dispute about the statutes, it seems to me the logical thing for the court to order is when a plaintiff brings a combined cause of action and the court has jurisdiction to hear both parts of that cause of action, the appellate process should be to one particular court. And I would ask that that be this court. With that, Your Honor, I thank you for your time. Let me ask you just one question about your briefing.  I just wanted to note that you represent in your brief that the D.C. Circuit has held that opposition activity should be construed broadly. Yes. And you cited a case called Beak v. Federal Express Corp. Yes. Isn't that a district court opinion? It may well be, and that may have been erroneous on our part. And I apologize, Your Honor. In the heat of a case of this magnitude over six years and in writing these briefs, I may have made a mistake. But the understanding premise, I think, is correct, and I would ask that the court adopt that. This is a broad remedial statute. And, again, I just want to conclude with this. At the end of the day, let's look at this, how a plaintiff in an agency, a woman in an agency, deals with it. They don't have lawyers in the beginning process. They don't get the technicalities. They don't know the language. They don't know what to say. The question for the court remains, did Adele Rupi submit enough facts that a jury can look at this and say, there's a hostile work environment, we have questions about her non-selection, there are disagreements in testimony, there is lost records, all of those things. Could a jury conclude that she suffered discrimination, retaliation, reprisal, a hostile work environment, was denied a job? And we believe the answer to that is yes. Thank you much. I take the matter under advisement.
judges: Wilkins; Rao; Pan